Ghief Ju-itioe Robertson
delivered the o union of the court.
J udge Nicholas did n t sit J
This is a snit in chancery, instituted by Sawyer, a junior patentee, for land claimed by Oliver under a senior grant to Robert Church. It seems that the entry of Sawyer is valid and includes the land now in controversy. The appellee has not exhibited or relied on the entry of Church, but has pleaded and now insists on lapse of time in bar •of the appellant’s equity. The appellee claims 250 acres of unimprovd land '■'•in the woods.” Both patents had been issued more than twenty years prior to the commencement of this snit. The land in contest was never occupied under either of the conflicting titles, except so far as, by construction, it may be deemed to have been in the possession of the one or the other patentee, in consequence of an actual occupancy by residence and enclosure (under each of their claims) of other parcels of the land covered' by both patents.
Robe-1 Church, the patentee, settled within his patent 1 ou ulary, about the year 1790, and continued to reside thereon until his death, since 1820; but he never extended his actual enclosure within the patent line of Sawver Between the years Í790 and 1792, his son, Robert Church, jr. intending with his permission to settle on a part of his tract which w as *179 Uíiwfr'spiííecl^’hmlt a house near the line of Sawyer, idearen about seven acres, covered by both patents, pnd, with the assent of one Quirk, who said he claimed under Sawyer, he cleared about thirteen acres, covered exclusively by the patent of Sawyer, and continued to reside on the place thus improved from the date of his first settlement until his death in 1825, claiming seven acres under his father, and the thirteen acres under Quirk: and there is proof, that Church, the patentee, “exercised ownership” over the whole tract included in his patent; but there is no proof of any other actual possession by him of any of the interference prior to 1813, than that which may have enured to him in consequence of the occupancy of his son Robert.
It does not appear that Sawyer ever resided on any part of the land included by his patent, or that he hiul at any time within twenty years prior to the institution of this suit, any other actual possession of any part of it than such possession as many have resulted to his benefit from the occupancy of persons who entered tinder- Quirk. It does not appear that Quirk ever settled on any part of t he land covered by either of the patents — but between the years 1795 and 1798 and 1800, several persons settled-within the interference of the two patents under contracts with Quirk, but all of them, except one Rutherford, entered as purchasers, by metes and hounds not including or interfering with the land now in contest. Rutherford entered as a tenant under Quirk, in 1798, and was succeeded by one Keeton, who remained nntil 1812 or 13.
The fact and the extent of possession must be ascertained by deductions from the foregoing circumstances. The depositions are loose and indefinite ■concerning facts which might have settled the controversy at once, without the necessity of resorting to inferences from the crude and imperfect generalities with which the parties, relying, we presume, oa much within their own observation and knowledge, seem to have been content to submit their case. But whatever may exist out of the record, the foregoing synopsis presents all the material faetre which have been proved.
*180 if each of the patentees should be considered as having'been actually possessed oí any portion of the l-.p, with tiie intention ol possessing the whole, he wlio held the better right should be deemed to have been m the actual possession of the parcel now n> eontest, Tiie appellant has tiie better right in equity'. Church hail the superior legal right. The appellant could not have maintained an ejectment on his junior legal title; he had no legal right of entry. Rut when lie seeks his equitable right, the chancellor will apply the statute oí limitations as tar as such application may be consistent with equity, or, in the language of authority, as- the statute would have applied if his right should have been legal instead of equitable." At law there is no difficulty in deciding, as between an elder and junior patentee (who hau both been in actual possession within the iap, each claiming and intending to occupy to the extent of his patent bounds) that the holder of the elder grant had been possessed of all the land not actually enclosed by the junior patentee. Rut whether, if the junior patentee hold the superior equity, the chancellor should consider the possession, under the like circumstances, to have been his, is a point which this court has never directly settled. The supreme court of the U. S. decided it in the affirmative in Hunt vs. Wicklilfe, 2d Peters.
But it does not become indispensable for this court to decide, in this case, tiie point thus presented, for we are of the opinion — 1st. í hat ’ll. Church was in possession of the.seven acres, with the intention of holding, for his father, possession of the land in controversy. 2d. That the appellant never was iii actual possession of tiie land now claimed by the appellee. (And we wish to be understood as not intimating any opinion on the point which we have waived.)
1st. We are disposed to think, that Church, the paentee, intended that tiie possession of his son shuuiu be extended beyond the enclosure. There is no proof that the son bekl any defined quantity or boundary, or occupied the land otherwise than as tiie beneficiary' and mere loenmtenens of the father: and, of course, we teel authorised to infer, that the father’s actual possession *181 .was as extensive as it would have been if he, instead of the son, had enclosed and cultivated the seven acre; within the two patents; and as he claimed to the extent of his patent, we should be disposed to infer that lie intended that the posse-sion and claim should be coterminous, when not. separated by intrusion; and therefore, as there is no proof restricting the possession of the son, of tending to shew the terms of his occupancy, or whether, as purchaser or as tenant, we will consider him as holding for the father, and jointly with him, without any limitation, as to quantity or boundary, by any contract between them. This inference is fortified rather than weakened by the fact that, when the son first entered, he intended to settle on ‘■‘•undisputed'” land — for from this circumstance it may he inferred that no definite boundary or quantity had, by contract or otherwise, been assigned to the son, but that he was permitted to enter upon and occupy', as an usufruct, the entire trac.t without restriction as to boundary:— and as he retained the seven acres until his death without disturbance, we may. infer that both his father and himself intended to hold land covered by' the appellant’s patent; and that jointly, the one as grantee, the other as usufruct, they intended to bo possessed eo-exterisivelv with the grant to the father, except so far as their possession was ousted by adverse occupancy'.
2d. The appellant according to the proof, was never possessed, injact-, of the land in contest, within twenty years prior to the commencement ol this suit, unless Rutherford was possessed as lessee of all the land not included in die tracts sold to others whose possession did not intrude on the boundary now claimed by the appellee.
There is no proof of the terms of Rutherford’s tenure — he seems to have been a stranger to the appellant. The depositions speak of ‘‘his place” and the person who now holds it as purchaser — of the eviction from it in the ejectment bv Owens. These facts, combined with the fact that Owens did not touch the land now in contest, and that other persons who held defined boundaries as purchasers, from Quirk, occupied such positions as to render it inv *182 probable that tiie lease included the land claimed by tne appellee, dispose us to think that neither Rutherford nor Keeton was ever possessed in fact of any part of that land.
Üiñníerruptpossossi.'» of an interference by elder patentee, and a lai'so of twenty years from emanation of junior pat”’ t, i« n bar to j'ir'ior pati’Dfee’s rq litnhlo <ilíi* «0 the infnte,rferonne.
Triplett, for appellant; Hoggin, for appellee.
Besides, no privity between Quirk and the appellant has been shewn to haveexisted when the former sold and leased parts of the land patented to the latter : — nor does it appear that these contracts w ere ever recognized by the appellant: — nor is there any proof that Quirk even claimed as purchaser or otherwise, under the appellant, the, whole tract covered by his patent or that portion of it claimed by the appellee. Therefore, there is no sufficient reason for inferring that -the lanu now in contest was leased to R uherford, or was churned by Quirk, or that such chum, if ever made, was sanctioned by the appellant! It is true that one witness swore in general end incidental terms, that Quir % sold out the whole tract, and that the lehole neighborhood thereupon settled on it — and that another witness swore that Quirk was in the po session of the whole tract. But these general allegations are evidently unauthorised deductions from the foregoing fads, and are materially inconsistent, in some respects, with facts proved by those two witnesses themselves. The extent of Quirk’s possession and its effect on the claim of the appellant must be determined by legal deductions B om established facts, and not by the hasty and unsustained inferences of witnesses whose opinions (perhaps inadvertently expressed) have not been accompanied by the reasons which may have prompted them.
Wherefore, as Church the patentee seems to have taken possession of the land m controversy, as early as 1792, and as theie is no sufficient proof that his possession has ever been interrupted by any intrusion, actual or i onstructive, the appellee is protected by lapse of time to the whole extent of the 250 acres claimed in this suit.
Decree affirmed.